# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **OLD REPUBLIC SURETY COMPANY**, | Case No. 3:25-cv-00463-IM |
| Plaintiff, | **OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT** |
| v. | |
| **ROSS ISLAND SAND & GRAVEL CO.**, an Oregon corporation; **R.B. PAMPLIN CORPORATION**, a Delaware corporation; **PACIFIC NORTHWEST AGGREGATES, INC.**, a Washington corporation; **COLUMBIA EMPIRE FARMS, INC.**, an Oregon corporation; and **ROBERT B. PAMPLIN**, an individual, | |
| Defendants. | |

Loren D. Podwill, Bullivant Houser Bailey PC, 1 SW Columbia Street, Suite 800, Portland, OR 97204. Attorney for Plaintiff.

**IMMERGUT, District Judge.**

Defendants R.B. Pamplin Corporation, its President and CEO Robert B. Pamplin, and three R.B. Pamplin Corporation subsidiaries, Ross Island Sand & Gravel Co., Pacific Northwest Aggregates, and Columbia Empire Farms, Inc. (together, "Defendants") entered into an

PAGE 1 – ORDER GRANTING MOTION FOR DEFAULT JUDGMENT

agreement with Plaintiff Old Republic Surety Company ("Plaintiff") in 2020, agreeing to indemnify Plaintiff in exchange for Plaintiff issuing surety bonds on behalf of Ross Island. Complaint ("Compl."), ECF 1 ¶ 9. Plaintiff brought this action alleging that Defendants breached the agreement by refusing to indemnify Plaintiff for the cost of a settlement Plaintiff reached in a separate action due to its issuance of a bond to Ross Island. *Id.* ¶¶ 13–16. Defendants were served, ECF 7, but none appeared or filed a responsive pleading. The Clerk of Court entered default against all Defendants, ECF 9, and Plaintiff now moves for default judgment, ECF 10. For the reasons explained below, Plaintiff's motion for entry of default judgment is granted, and Plaintiff is awarded $629,135.27.

## BACKGROUND

In 2020, Defendants entered a General Indemnity Agreement ("Indemnity Agreement") with Plaintiff in consideration for Plaintiff issuing surety bonds on behalf of Ross Island. Compl., ECF 1 ¶ 9; Indemnity Agreement, ECF 11-1, Ex. 1. Under the Agreement, Defendants agreed to:

> continually indemnify and save [Plaintiff] harmless from and against every claim, demand, loss, cost, charge, suit, judgment and expense, including but not limited to attorney's fees, investigative costs, etc., which [Plaintiff] may pay, sustain or incur in consequence of having executed or procured the execution of Bond(s), or the failure of the Indemnitor, to perform or comply with the covenants and conditions of [the Indemnity Agreement] . . . .

Compl., ECF 1 ¶ 10; ECF 11-1, Ex. 1 at 1. The Indemnity Agreement further provided that "upon demand by" Plaintiff, Defendants would "immediately provide [Plaintiff] with a deed, deed of trust, or other appropriate instrument of conveyance to all of [Defendants'] property," authorizing Plaintiff "to sell any and all of said property so that the same may be converted into money and deposited and used." Compl., ECF 1 ¶ 10; ECF 11-1, Ex. 1 at 2.

At Defendants' request, in March 2022, Plaintiff issued several bonds for Ross Island concerning several public works projects in Oregon. Compl., ECF 1 ¶ 12; Subcontract Performance Bond, ECF 11-1, Ex. 2. In May 2024, Plaintiff was named as a defendant in a California lawsuit due to its issuance of the bond to Ross Island. Compl., ECF 1 ¶ 13. In October 2024, Plaintiff, as surety on that bond, entered into a settlement agreement in the California action and paid $600,000 to the plaintiffs. *Id.* ¶ 14.

Pursuant to their Indemnity Agreement, Plaintiff twice demanded that Defendants defend, indemnify, and hold Plaintiff harmless with respect to the California action. *Id.* ¶¶ 16, 19. Plaintiff filed its Complaint in this action on March 18, 2025, alleging Defendants refused those demands to indemnify. *Id.* ¶ 20. No Defendant has appeared or filed an answer. On May 15, 2025, Plaintiff moved for entry of default, ECF 8, which the Clerk of Court granted as to all Defendants, ECF 9. Plaintiff now moves for default judgment against Defendants. Motion for Default Judgment ("Mot."), ECF 10.

## STANDARDS

After the Clerk of Court enters default against a defendant, the court may enter default judgment against that defendant. Fed. R. Civ. P. 55(b)(2). When reviewing a motion for default judgment, the court "takes the well-pleaded factual allegations in the complaint as true." *DIRECTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 854 (9th Cir. 2007) (quotations and citation omitted). A court need not, however, accept "facts that are not well-pleaded," "conclusions of law," *id.*, or the amount of claimed damages, *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 918 (9th Cir. 1987).

## DISCUSSION

This Court begins by determining whether it has jurisdiction over this case and Defendants, and whether venue is proper. Concluding that it has jurisdiction and that venue is

proper, this Court then assesses whether default judgment is warranted and what relief to provide. This Court finds that default judgment is warranted under the *Eitel* factors and that Plaintiff is entitled to damages incurred under the Indemnity Agreement, including the cost of litigating and settling that action, and its reasonable attorney's fees and costs associated with this action. Plaintiff is awarded $629,135.27 total.

## A.  Jurisdiction and Venue

Before entering default judgment against a non-appearing party, district courts have an affirmative duty to consider subject-matter jurisdiction and personal jurisdiction. *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). This Court finds that it has jurisdiction over this case and over Defendants. This Court also finds that venue is proper in this District.

Plaintiff has sufficiently established subject-matter jurisdiction based on diversity of citizenship. *See* 28 U.S.C. § 1332. Plaintiff Old Republic is incorporated in Wisconsin and has its principal place of business there, Compl., ECF 1 ¶ 1, and is thus a citizen of Wisconsin. Defendant R.B. Pamplin Corporation is a Delaware corporation with its principal place of business in Oregon, *id.* ¶ 3, so it is a citizen of both Delaware and Oregon. Defendants Ross Island and Columbia Empire Farms, both wholly owned subsidiaries of R.B. Pamplin Corporation, *id.* ¶¶ 2, 5, are Oregon corporations with their principal places of business in Oregon, *id.*, so both are citizens of Oregon. Defendant Pacific Northwest Aggregates is a Washington corporation that, on information and belief, is a wholly owned subsidiary of Ross Island, *id.* ¶ 4, so it is a citizen of Washington and Oregon. Defendant Robert Pamplin is an individual domiciled in Lake Oswego, Oregon, so he is a citizen of Oregon. *Id.* ¶ 6. Complete diversity exists, and the amount in controversy exceeds $75,000. *Id.* ¶ 8. The diversity jurisdiction requirements are met.

PAGE 4 – ORDER GRANTING MOTION FOR DEFAULT JUDGMENT

Plaintiff has also established personal jurisdiction. All Defendants reside or are incorporated in Oregon and are thus subject to general personal jurisdiction in this District. *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014).

Venue is proper in the District of Oregon, as all Defendants reside in Oregon. 28 U.S.C. § 1391(b)(1).

## B.  *Eitel* Factors

The Ninth Circuit has established factors to guide a district court's decision whether to enter a default judgment:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). This Court discusses each in turn.

### 1.  Factor 1: Prejudice to Plaintiff

Plaintiff would be prejudiced if default judgment is not entered. Plaintiff twice demanded that Defendants indemnify Plaintiff and post collateral as required by the Indemnity Agreement, but Defendants refused both requests. Declaration of Lisa Frasier ("Frasier Decl."), ECF 11 ¶¶ 7–8, 11. "If [Plaintiff's] motion for default judgment is not granted, [Plaintiff] will likely be without other recourse for recovery." *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). This factor supports entering default judgment in favor of Plaintiff.

### 2.  Factors 2 and 3: Merits and Sufficiency of Complaint

This Court considers the second and third *Eitel* factors together. *Viet. Reform Party v. Viet Tan – Viet. Reform Party*, 416 F. Supp. 3d 948, 962 (N.D. Cal. 2019) (noting these factors

are often considered together). Together, these factors require that the plaintiff's allegations "state a claim on which the [plaintiff] may recover." *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978) (Kennedy, J.). All well-pleaded factual allegations are taken as true, except the amount of claimed damages. *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977).

To state a claim for breach of contract under Oregon law, the plaintiff must allege "the existence of a contract, its relevant terms, and a breach by defendant that resulted in damage to plaintiff." *Huskey v. Oregon Dep't of Corr.*, 373 Or. 270, 275 (2025). The breach must be material, meaning "it goes to the very substance of the contract and defeats the object of the parties in entering into the contract." *In re Est. of Bisio*, 33 Or. App. 325, 331 (1978).

Plaintiff states a claim for breach of contract. The parties formed a valid contract when they entered into the Indemnity Agreement. Under the Indemnity Agreement, Plaintiff has the right to be indemnified by Defendants for any loss incurred for posting the bonds and for Defendants to provide collateral security. Plaintiff alleges that Defendants have received bond claims totaling $641,929.07. Compl., ECF 1 ¶ 19. "Any claim asserted against the surety, regardless if it is valid or outside the scope of the bond triggers the obligation to indemnify the surety." *Fireman's Fund Ins. Co. v. Nizdil*, 709 F. Supp. 975, 976–77 (D. Or. 1989). Plaintiff alleges that Defendants refused to post collateral or indemnify Plaintiff. Compl., ECF 1 ¶¶ 16, 20. This failure substantially undermines the basis of the Indemnity Agreement and constitutes a material breach. *See N. Am. Specialty Ins. Co. v. Access Equip. Rental, LLC*, No. 3:12-CV02105-HZ, 2013 WL 1150002, at *2 (D. Or. Mar. 15, 2013); *Ins. Co. of the W. v. Kuenzi Commc'ns, LLC*, No. 6:09-cv-06102-AA, 2009 WL 2731349, at *3 (D. Or. Aug. 26, 2009). Plaintiff's breach of contract claim is meritorious, so these factors support entering default judgment in Plaintiff's favor.

### 3. Factor 4: Sum of Money at Stake

Plaintiff requests $630,883.61[1] in damages. Mot., ECF 10 at 10. This amount—based exclusively on Defendants' breach of the Indemnity Agreement—is reasonable, as it is significantly less than the $8,554,580 total amount of the subcontract bond. *See* Subcontract Performance Bond, ECF 11-1, Ex. 2 at 1; *Swiss Re Corp. Sols. Am. Ins. Corp. v. Jeff Carter Constr., Inc.*, No. 6:22-CV-01696-MK, 2023 WL 3571496 (D. Or. Apr. 21, 2023), *findings and recommendation adopted*, 2023 WL 3570482 (D. Or. May 18, 2023) (finding this *Eitel* factor weighed in favor of the plaintiffs "where the judgment sought is well under the amounts contemplated by the parties under the terms of the bonds"). This factor favors default judgment.

### 4. Factor 5: Possibility of Factual Dispute

This factor considers whether a dispute of material facts is likely. Generally, "[t]he interpretation of a contract is a mixed question of law and fact." *Miller v. Safeco Title Ins. Co.*, 758 F.2d 364, 367 (9th Cir. 1985). Since Defendants did not answer the Complaint or otherwise appear despite being served, they are deemed to have admitted all well-pleaded material facts alleged in the complaint. *Hoa Huynh*, 503 F.3d at 851. This factor thus weighs in favor of a default judgment.

---

[1] Plaintiff's motion requests $630,804.30 in damages. ECF 10 at 10. Plaintiff's supplemental declaration states that it miscalculated its legal fees related to the California action in an amount $887.20 less than Old Republic's actual loss, and confirmed in an email to the Court that its total fees and costs associated with the California action is $12,425.25. Supplemental Declaration of Lisa Frasier, ECF 13 ¶ 3. This Court has adjusted Plaintiff's damages request accordingly ($600,000 for settling the California action + $12,425.25 attorney's fees and costs in the California action + $17,483.38 attorney's fees in this action + $974.98 costs in this action = $630,883.61).

### 5.  Factor 6: Excusable Neglect

Defendants were all properly served. *See* Affidavits of Service, ECF 12-1, Exs. 1–5.

Default "cannot be attributed to excusable neglect" when the defendants were properly served.

*Shanghai Automation Instr. Co. v. Kuei*, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001); *see*

*Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F. Supp. 2d 1072, 1082 (C.D. Cal. 2012) (noting this

factor "favors default judgment when the defendant has been properly served").

In addition, Defendants had ample time to perform their obligations under the Indemnity

Agreement; nearly seven months passed between Plaintiff's demand for indemnification and

filing of this action. Compl., ECF 1 ¶ 19; Frasier Decl., ECF 11 ¶ 7. Given this "passage of time,

it is unlikely that [Defendants'] failure to appear is the result of excusable neglect." *Swiss Re

Corp. Sols.*, 2023 WL 3571496, at *3. The possibility that the entry of default here was due to

excusable neglect is low, so this factor weighs in favor of entering default judgment.

### 6.  Factor 7: Policy Preference for Merits Decisions

This factor considers the strong policy preference for decisions on the merits. *See Eitel*,

782 F.2d at 1472 (stating that cases "should be decided on the merits whenever reasonably

possible"). However, "the mere existence of Fed. R. Civ. P. 55(b) indicates that this preference,

standing alone, is not dispositive." *PepsiCo*, 238 F. Supp. 2d at 1177 (citation omitted).

Defendants' failure to participate in this action makes deciding on the merits "impracticable, if

not impossible." *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1061 (N.D. Cal.

2010) (citing *id.*). Where, as here, Defendants have failed to appear despite being served, this

factor is outweighed by the other factors.

In sum, all seven *Eitel* factors support entering default judgment in Plaintiff's favor.

PAGE 8 – ORDER GRANTING MOTION FOR DEFAULT JUDGMENT

## C. Remedies

Plaintiff requests that this Court order Defendants to pay damages in the amount of $600,000 and attorney's fees and costs totaling $12,425.25[2] including interest, that Plaintiff incurred in settling the California action. Mot., ECF 10 at 19; Frasier Decl., ECF 11 ¶¶ 12–13. Plaintiff also requests attorney's fees and costs totaling $18,458.36 incurred in bringing this action. Mot., ECF 10 at 12; Frasier Decl., ECF 11 ¶¶ 12–13. Plaintiff's total request is for $630,883.61. Mot., ECF 10 at 9.

This Court first assess the damages Defendants must pay for breaching the Indemnity Agreement. Rather than consider Plaintiff's request for fees incurred in the California action as attorney's fees, this Court analyzes them as damages incurred as a result of Defendants' breach of the Indemnity Agreement. This Court awards Plaintiff these damages awards. This Court then assesses Plaintiff's request for attorney's fees and costs associated with bringing this action. As described below, this Court reduces Plaintiff's attorney's fees by ten percent, awarding $15,735.04 in attorney's fees and $974.98 in costs. This Court awards Plaintiff $629,135.27 total.

### 1. Damages Under Indemnity Agreement

Plaintiff requests that this Court order Defendants to pay $600,000 in damages that Plaintiff paid to settle the California action. Mot., ECF 10 at 9–10. Plaintiff has supported its request with declarations attesting that it suffered a loss of at least $600,000 in settling the

---

[2] Plaintiff's motion requests $11,538.05 in attorney's fees and $807.89 in costs related to litigating the California action. Mot., ECF 10 at 9. Plaintiff's supplemental declaration in support of those costs states that Plaintiff's calculation of $11,538.05 in attorney's fees was an error and provided documentation supporting its claim that it actually incurred $12,425.25 total in legal fees and costs in that action. Supplemental Declaration of Lisa Frasier, ECF 13 ¶ 3. This Court clarified with Plaintiff's counsel by email that the $12,425.25 figure represents both legal fees and costs associated with the California action.

PAGE 9 – ORDER GRANTING MOTION FOR DEFAULT JUDGMENT

California action. Frasier Decl., ECF 11 ¶ 9. This Court finds that this is an appropriate award of damages Defendants must pay Plaintiff under the Indemnity Agreement for settling the California action.

Plaintiff also requests $12,425.25 in attorney's fees and costs incurred in litigating the California action. Supplemental Declaration of Lisa Fraiser ("Frasier Suppl. Decl."), ECF 13 ¶ 13; Fraiser Decl., ECF 11 ¶ 13. Plaintiff has supported its request with a declaration of the costs Old Republic paid counsel for the California action and attached invoices and proof of payment of those legal fees paid. ECF 13-1, Ex. 3. This Court finds that these fees and costs were reasonably expended by Plaintiff in the California action and awards Plaintiff $12,425.25.

### 2. Attorney's Fees and Costs

Plaintiff requests that this Court order Defendants to pay $17,483.38 in attorney's fees and $974.98 in costs and expenses incurred in this action. Mot., ECF 10 at 12; Frasier Decl., ECF 11 ¶¶ 12–13. "In a diversity case, the availability of attorneys' fees is governed by state law." *Kern Oil & Ref. Co. v. Tenneco Oil Co.*, 792 F.2d 1380, 1388 (9th Cir. 1986). "Under Oregon law, the prevailing party on a breach-of-contract claim can recover its attorney fees if the terms of the contract, whether express or implied, authorize the award." *Mindful Insights, LLC v. VerifyValid, LLC*, 301 Or. App. 256, 258 (2019), *adhered to on reconsideration*, 302 Or. App. 528 (2020) (citing O.R.S. 20.083). A plaintiff qualifies as a prevailing party when default judgment is entered against the defendant. *See* O.R.S. 20.077(2).

Here, the terms of the Indemnity Agreement expressly authorize the award Plaintiff seeks. The Indemnity Agreement states that Defendants shall "indemnify and save [Plaintiff] harmless from" every "cost . . . including but not limited to attorney's fees" that Plaintiff incurs as a "consequence of having executed or procured the execution of [the Subcontract Bond], or the failure of the [Defendants], to perform or comply with the covenants and conditions of" the

PAGE 10 – ORDER GRANTING MOTION FOR DEFAULT JUDGMENT

Indemnity Agreement. ECF 11-1, Ex. 1 at 1. Plaintiff is the prevailing party, as this Court is entering default judgment in its favor and against Defendants.

"To determine the amount of attorney fees" to award under O.R.S. 20.083, this Court "considers the factors identified in ORS 20.075." *Liberty Mut. Ins. Co. v. RB Pamplin Corp.*, No. 3:24-cv-01598-AR, 2025 WL 1071652, at *5 (D. Or. Feb. 18, 2025), *findings and recommendation adopted*, 2025 WL 1070359 (D. Or. Apr. 7, 2025). This Court is not obligated to discuss factors that "play no role in its decision." *Id.* (citing *O'Connor v. Cnty. of Clackamas*, No. 3:11-cv-01297-SI, 2016 WL 3063869, at *2–3 (D. Or. May 31, 2016)).

### a. O.R.S. 20.075(1) factors

O.R.S. 20.075(1) factors (a)-(e) are:

> (a) The conduct of the parties in the transactions or occurrences that gave rise to the litigation, including any conduct of a party that was reckless, willful, malicious, in bad faith or illegal.

> (b) The objective reasonableness of the claims and defenses asserted by the parties.

> (c) The extent to which an award of an attorney fee in the case would deter others from asserting good faith claims or defenses in similar cases.

> (d) The extent to which an award of an attorney fee in the case would deter others from asserting meritless claims and defenses.

> (e) The objective reasonableness of the parties and the diligence of the parties and their attorneys during the proceedings.

These factors[3] support an award of fees to Plaintiff. Plaintiff has shown through its pleadings, motion, and supporting declarations that throughout the parties' relationship, Plaintiff

---

[3] Factor (f), "[t]he objective reasonableness of the parties and the diligence of the parties in pursuing settlement of the dispute," is irrelevant here since Defendants have not even appeared, much less attempted to settle the matter. Factor (g) is "[t]he amount that the court has awarded as a prevailing party fee under ORS 20.190." Plaintiff states it is not seeking any

PAGE 11 – ORDER GRANTING MOTION FOR DEFAULT JUDGMENT

complied with the terms of the Indemnity Agreement and subcontract bond and diligently attempted to recoup the loss it suffered in the California action. As discussed above, Plaintiff's claims are objectively reasonable, and the legal issues were not novel or difficult. Furthermore, an award of fees is appropriate to deter indemnitors such as Defendants from refusing to comply with indemnity agreements entered at arm's length and to uphold the terms of written agreements between bond principals and sureties.

### b. O.R.S. 20.075(2) factors

Factors (a), (c), (d), and (g) under O.R.S. 20.075(2), "which are akin to the 'lodestar' factors, are relevant to the court's determination of an appropriate amount of fees, such as the number of hours expended by counsel, and if the rates charged are reasonable." *Liberty Mut. Ins.*, 2025 WL 1071652, at *6. In particular, factors (c) and (g) respectively direct courts to consider the fees "customarily charged in the locality for similar legal services" and the "experience, reputation, and ability of the attorney performing the services." Courts in Oregon refer to the most recent Oregon State Bar ("OSB") economic survey as a benchmark for comparing an attorney's billing rate with the fee customarily charged in the locality.[4] *Precision Seed Cleaners v. Country Mut. Ins. Co.*, 976 F. Supp. 2d 1228, 1244 (D. Or. 2013).

Plaintiff requests that the Court award it $17,483.38 in attorney's fees and $974.98 in costs incurred in this action. Mot., ECF 10 at 9–10. Plaintiff's counsel submitted an itemized log describing hours spent on this case, Declaration of Loren Podwill ("Podwill Decl."), ECF 12-1,

---

prevailing party fees under this statute, Mot., ECF 10 at 16–17, so this Court declines to award them.

[4] This Court refers to the 2022 OSB Economic Survey, which is available on the Oregon State Bar website at https://www.osbar.org/_docs/resources/Econsurveys/22EconomicSurvey.pdf [https://perma.cc/PE5N-S57R (archived Aug. 6, 2025)].

Ex. 6, as well as a signed declaration attesting to the accuracy of the billing records, summarizing the experience of the lawyers involved, and attesting to the reasonableness of the time spent and the lawyers' hourly rates, *id.*, ECF 12 ¶¶ 8–13.

### i. Hourly rates

Plaintiff requests fees for the work of two attorneys and one paralegal. Loren Podwill is a shareholder who has been practicing law for over forty years. *Id.* ¶ 10. Plaintiff requests an hourly rate of $325 to compensate Mr. Podwill. *Id.* ¶ 13. Varro Clarke is an associate who has been practicing law since 2023. *Id.* ¶ 11. Plaintiff seeks discounted hourly rates of $215 and $245 for some of Mr. Clarke's work, and a rate of $250 for the remaining hours. *Id.* ¶ 13. Finally, Plaintiff seeks a discounted hourly rate of $155 for Julia Batdorff, who has over thirty years of experience as a paralegal. *Id.* ¶ 12–13. This Court finds that the hourly rates for these attorneys are reasonable, considering their experience, *see* OSB Economic Survey at 42–43, and the mean rates for business litigation in downtown Portland, *see id.* at 44.

### ii. Number of hours billed

Plaintiff requests fees for 71.7 hours of total attorney work on various tasks related to litigating this case, with the bulk of the work performed by Mr. Clarke (59.2), and .2 hours of paralegal work. Podwill Decl., ECF 12 ¶ 13; ECF 12-1, Ex. 6. "Utilizing more senior attorneys to act in a supervisory role, with the less-experienced attorney performing most of the work, reflects good billing judgment." *Liberty Mut. Ins.*, 2025 WL 1071652, at *6.

Nevertheless, on at least a few occasions, counsel billed .1 to .2 hours for sending or receiving what appear to be simple emails or clerical tasks. *Id.* Ex. 6 at 1–2 (10/25/24, email to Lisa Frasier regarding Kiewit contract balance (.1); 12/2/24, email from Rosa regarding Kiewit payment (.1); 6/23/25, email with court clerk regarding motion for default judgment (.2)); *see Liberty Mut. Ins.*, 2025 WL 1071652, at *6; *Stavrum v. NW Precision Constr. LLC*, No. 3:21-

PAGE 13 – ORDER GRANTING MOTION FOR DEFAULT JUDGMENT

CV-01761-SB, 2023 WL 2761363, at *3 (D. Or. Mar. 6, 2023), *report and recommendation adopted*, 2023 WL 2756227 (D. Or. Apr. 3, 2023) (discussing how billing .1 hour for each email can mask excess and redundancies and collecting cases reducing fee awards for that reason). Furthermore, the total hours Plaintiff billed "for what appears to be a relatively straightforward surety action that ultimately was unopposed is more hours than billed in comparable litigation in this district." *Liberty Mut. Ins.*, 2025 WL 1071652, at *7 (collecting cases approving roughly 40–50 hours, on average).

In light of these issues, this Court finds that a modest ten percent reduction in Plaintiff's attorney's fees award is appropriate. *See id.*; *Stavrum*, 2023 WL 2761363, at *4; *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008) (affirming a district court's ten percent "haircut" reduction in attorney's fees). This Court will therefore award Plaintiff $15,735.04 in attorney's fees.[5]

### c. Costs

Plaintiff also seeks to recover $974.98 in costs and expenses incurred in bringing this action. Mot., ECF 10 at 10. Those costs include copying, printing, court fees, and subpoena fees. Podwill Decl., ECF 12-1, Ex. 7. Plaintiff is entitled to recover its reasonable costs and expenses under the contract as the prevailing party. O.R.S. 20.083; *see* Indemnity Agreement, ECF 11-1, Ex. 1 at 1 (requiring Defendants to "indemnify and save" Plaintiff harmless from "every . . . cost" that Plaintiff incurs because of the contract). Recoverable costs and expenses include photocopies, court filing fees, and service fees. *See Liberty Mut. Ins.*, 2025 WL 1071652, at *6; *Logan v. Tiegs*, No. 3:03-cv-00435-BR, 2010 WL 2245060, at *2 (D. Or. June 2, 2010). Plaintiff is therefore awarded $974.98 in costs.

---

[5] The fees award is calculated as follows: $17,483.38 – $1,748.34 = $15,735.04.

**CONCLUSION**

Plaintiff's Motion for Default Judgment, ECF 10, is GRANTED. **IT IS ADJUDGED**

that judgment is entered in favor of Plaintiff Old Republic Surety Company against Defendants

Ross Island Sand & Gravel Co., R.B. Pamplin Corporation, Pacific Northwest Aggregates,

Columbia Empire Farms, Inc., and Robert B. Pamplin in the amount of $629,135.27.


**IT IS SO ORDERED.**

DATED this 21st day of August, 2025.


/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge


PAGE 15 – ORDER GRANTING MOTION FOR DEFAULT JUDGMENT